## Pine River Bank v. Joseph Hodsdon.

Where the charter of a bank requires a certain amount of stock to be paid in before the bank
can go into operation, and the public statute requires the capital of banks to be paid in
cash, if a subscriber for stock is allowed by the directors to give a note for his stock in-
stead of paying cash, and the bank goes into operation in violation of the charter on a
capital in which the note is reckoned as a cash payment for stock, the illegality of the
transaction cannot be set up in defense to an action by the bank on the note.

Assumpsit, on two joint and several promissory notes for $2,000
each, signed by one Hill as principal, and the defendant as surety, and
payable to the plaintiff—one dated Nov. 4th, 1857, and the other, Nov.
5th, 1857.

The defendant, under the general issue, introduced evidence tending
to show the following facts:

The act incorporating the bank passed July 12th, 1856.

Section 2 of the act provided that the capital stock should consist of
the sum of $50,000, "*provided*, that no stockholder shall be allowed to
borrow at said bank until he shall have paid in his full proportion of said
sum of $50,000 at least."

Section 3 provided, 1. "That said corporation shall be subject to
the provisions of all laws in force in relation to banking corporations.
2. That said corporation shall not issue and have in circulation, at any
one time, bills, notes or obligations to a greater amount than the cap-
ital stock actually paid in at such time, and then composing the capital
stock of said bank," with a penalty for any officer of the bank who
should violate this provision concerning the circulation of bills.

Section 6 provided "That if said corporation shall not be organized
and in operation, and shall not have paid to the treasurer of the State,
on or before the second Wednesday of June," 1857, a tax agreeably to
chapter 75 of the Revised Statutes, "in that case this act and every part
thereof shall be void and of no effect:"

The last of April, 1857, Hill, at the request of the officers of the
bank, carried to Ossipee, where the bank was situated, $5,000 in five
bills of the Somersworth Bank, of $1,000 each for the purpose of using
them as they were afterwards used. He handed the bills to the officers
of the bank, and received a certificate for 50 shares of the capital stock
of the bank, and at the same time gave to the bank a note for $5,000
signed by himself as principal and by the defendant as surety, and
received therefor the five bills and paid the amount of discount on the
note:

This was done to take up the balance of the $50,000 capital stock
not taken by other persons, and apparently to comply with, but really
to evade, the charter and the law relating to capital stock and the pay-
ment of it in cash, and to enable the bank to go into operation with an
apparent capital of $50,000 in the manner required by the charter.
Large amounts of the capital stock were taken by the defendant and by
other persons in the same manner. The five bills were used, on the
same day, by the bank, and the defendant and others, in the same man-
ner and for the same purposes:

Hill then, on the same day, carried away and never returned to the

bank, the five bills, but returned them to the Somersworth Bank, from which he obtained them upon his check :

Hill afterwards failed and assigned the 50 shares for the benefit of his creditors :

The defendant signed the $5,000 note as surety for Hill, at the request of officers of the bank, upon their representation that the whole transaction was merely a formal and temporary arrangement, to continue only until the 50 shares could be taken by some one as a bona fide stockholder, and upon their promise that they would hold him harmless :

Afterwards Hill took up the note for $5,000, by giving other notes for $1,000, and renewing the balance by giving the two notes upon which this action is brought.

Upon this evidence the defendant claimed : —

1. That he was not liable by reason of the promise to hold him harmless.

2. That the $5,000 note (to renew $4,000 of which the notes in suit were given) was without consideration.

3. That the note was void because the whole transaction was contrary to public policy and illegal.

The Court ruled that the evidence constituted no defence, and ordered a verdict for the plaintiff, and the defendant excepted.

*Wheeler & Hall*, for the defendants, cited Chitty on Contracts, 693 ; *Favor* v. *Philbrick*, 7. N. H. 326 ; *Roby* v. *West*, 4 N. H. 285 ; *Wheeler* v. *Russell*, 17 Mass. 258 ; *White* v. *Franklin Bank*, 22 Pick. 181 ; *Atlas Bank* v. *Nahant Bank*, 3 Met. 581 ; *Boutelle* v. *Melendy*, 19 N. H. 196 ; *Allen* v. *Deming*, 14 N. H. 138.

*Jeremiah Smith*, for the plaintiff, cited *Smyley* v. *Head*, 2 Rich. (So. Car.) 590 ; *Loomis* v. *Fay*, 24 Verm. 240, 246 ; *Braman* v. *Binghan*, 26 N. Y. Co. of Appeal, 483 ; *Wight* v. *Shelby R. R. Co.* 16 B. Monroe, 4 ; *Lawton* v. *Sager*, 11 Barb. 49 ; *Badcock* v. *Steadman*, 1 Root 87 ; *Cowles* v. *Gridley*, 24 Barb. 301 ; *Warren Academy* v. *Starret*, 15 Maine, 443 ; *Concord Bank* v. *Rogers*, 16 N. H. 9 ; *Farmers' & Mechanics' Bank* v. *Jenks*, 7 Met. 592 ; *Sanborn* v. *French*, 22 N. H. 246 : *Farmers' Bank* v. *Burchard*, 33 Verm. 346, 384, 389 ; *Bates* v. *The Bank*, 2 Ala. 451, 464 ; *Mott* v. *U. S. Trust Co.* 19 Barb. 568 ; Sedgwick on Statute and Constitutional Law, 90 ; *Little* v. *O'Brien*, 9 Mass. 423 ; A. & A. on Corp. sec. 636 ; *City Bank* v. *Barnard*, 1 Hall, 70 ; *White Mountains R. R.* v. *Eastman*, 34 N. H. 124 ; *Graff* v. *Pittsburg & Steubenville R. R. Co.*, 31 Penn. 498 ; *Robinson* v. *Pittsburg & Connellsville R. R. Co.*, 32 Penn. 334 ; A. & A. on Corp. sec. 146 ; Redfield on R. R. 69 ; *Southern Plank Road Co.* v. *Hixon*, 5 Md. 165 ; *Fisher* v. *Ellis*, 3 Pick. 321 ; *Bavington* v. *Pillsburg &c. R. R. Co.*, 34 Penn. 358, 362.

PERLEY, C. J.   The charter required that the fifty thousand dollars

of stock should be taken and paid in before the bank went into operation ; and the statute required that the stock should be paid in cash. Taking the case to have been such as the defendant offers to prove, the ceremony of exhibiting and withdrawing the five bills of the Somersworth Bank had no effect on the substance of the transaction. In reality Hill gave the five thousand dollar note for his fifty shares of stock, instead of paying cash as the law required. No cash was in fact paid except the amount of discount on the note. Even if it could be understood that Hill hired the money of the bank on the note and paid that money for the stock, the loan of the money would have been in violation of the charter, which provided that no stockholder should be allowed to borrow money of the bank until he had paid in his proportion of the fifty thousand dollars at least. In any view of the case, the transaction, out of which the note grew, was illegal, so far as Hill and the directors of the bank were concerned. The directors agreed in behalf of the bank to this illegal arrangement. If this made the bank, as a corporation, party to the illegal act, according to the well settled general rule, there could have been no recovery on the note, which grew out of the transaction, nor on the notes sued in this action, which have been substituted for it.

The object of exhibiting the five bank bills and going through the ceremony of a fictitious payment, evidently was to deceive those who were interested in the subject, and not in the secret, by making it appear as if the five thousand dollars had been paid in cash, and the note for five thousand dollars given on a loan of money by the bank to a stockholder, who had paid for his stock in cash, and thus enable Hill to become a stockholder and the bank to go into operation in violation of the charter and of the law ; and this contrivance was entirely successful ; Hill was admitted as a stockholder, and the bank went into operation. Hill, in substance, represented that he had paid in his stock in cash ; that the note for five thousand dollars was given on a lawful loan of money from the bank to a stockholder who had paid for his stock in cash. The bank went into operation on the faith of this representation. We must suppose that the bank commissioners, in their examinations, and the public authorities, to whom the quarterly returns, showing the condition of banks, are required to be made, as well as the innocent stockholders, depositors, holders of bills, and other creditors of the bank, trusted to this false representation that the five thousand dollars for Hill's stock was paid in cash, and that this note was a legal and valid security given to the bank in the usual course of their business, constituting part of the assets of the bank.

The law, which requires the stock of banks to be paid in cash, and the provision of the charter, which prohibits loans to stockholders who have not paid for their stock, were intended partly, perhaps, for the benefit of the stockholders, but chiefly, no doubt, for the protection of the public, to secure the bill holders, depositors, and other creditors of the bank against loss.

Banks are technically classed as private corporations ; but their corporate powers and privileges are granted upon public considerations,

and for the security of the public they are made subject to the supervision, and, in many things, to the control, of the public authorities. The directors and other officers of banks are not mere private agents of the stockholders, acting solely for their pecuniary benefit; but they are so far public officers that a large part of their official duties are imposed for the protection of the public; they are required to render periodical accounts of the condition of the banks, and are punishable, criminally, for their official delinquencies.

The plaintiffs, in claiming on these notes, act for the general benefit of all parties interested in the assets of the bank; for the innocent stockholders, whether they hold under the original subscriptions or by subsequent purchase, for the bill-holders, depositors, and other creditors of the corporation. The bank in this suit represents their interests. If a recovery should be had, the amount recovered will be added to the assets of the bank for their benefit and security. We think that the directors, if they were concerned in such cheat and crime, did not make the bank, representing such interests and charged with such duties, party to the cheat and crime in such way as to prevent a recovery on these notes for the benefit of the parties whom the violated law was intended to protect; that the directors did not and could not make the corporation party to the fraud and crime, so as to prevent the recovery in this suit.

There are well considered authorities which go to establish the general principle, that, where the officers of a corporation, like this bank, have violated the law or been guilty of a fraud, the corporation is not made, by the misconduct of the officers, party to their illegal and fraudulent acts in such way as to prevent a recovery on a contract growing out of the illegal and fraudulent transaction. The question on the right to recover has been treated in such cases as if the parties ultimately interested in the recovery were the nominal parties to the suit. By the express provisions of our statutes, corporations are in some instances made liable to penalties for neglect to perform their corporate duties, as for neglect to pay their bills in specie on demand; but the present case is not of that class.

*Graff* v. *The Pittsburg & Steubenville Railroad*, 31 Penn. 489, was assumpsit by the railroad to recover five thousand dollars for one hundred shares subscribed for by the defendant's testator. One ground of defense set up was that the lists of subscribers and stockholders made out and exhibited from time to time to the governor of the commonwealth and to the mayor of the city of Pittsburg, for the purpose of obtaining a charter of the governor, and a subscription of stock from said city, were not bona fide and true transcripts from the books, &c., representing actual subscriptions and payments, and that the plaintiffs, being parties, could not make use of them to recover against the defendant.

On this point, Mr. Justice Woodward, in delivering the opinion of the court, says: "There is not more than one other point on this record worthy of notice; it is the very desperate ground of defence assumed in the 8th proposition submitted to the court, assuming that Graff, having been concerned in imposing on the governor and mayor with false lists of

subscribers and stockholders is not liable to the company, because the company was a party to the fraud. I will not say it was wrong for the executrix to suggest such a ground of defense; but I persuade myself that if Graff himself were here, he would shrink from it; as an honest man he could not stand upon it an instant. If the subscriptions were feigned and fraudulent, the subscriber, actual or fictitious, is still bound to comply with all the terms and responsibilities imposed upon him in the same manner as if he were a bona fide subscriber. A subscription to a joint stock is not only an undertaking to the company, but with all the other subscribers. Such contracts are trilateral, and even if fraudulent as between two of the parties, they are to be enforced for the benefit of the third. It is a mistake to speak of the company as a party to the fraud. If there was such a fraud, the company was rather a victim of it than a particeps. An allegation of that which is worse than Punic faith, is not a defense to such a contract, nor ground to justify the repudiation of it."

In this case of *Graff* v. *The Railroad*, the ground was taken by the plaintiff that the contract of the intestate grew out of a fraud, by which fictitious and feigned subscriptions were imposed on the governor, and the mayor of Pittsburg; that the railroad was party to the fraud, and and therefore could not maintain the action on the contract; but the doctrine of the case is, that this was not the fraud of the corporation, though it was committed by the officers of the corporation acting in its behalf, and though the corporation ratified the arrangement so far as to claim on the contract. I do not see how that case can be distinguished in principle from the present.

*Mott* v. *The United States Trust Co.*, 19 Barb. 568, was a bill in equity to enjoin the company against collecting a note given by Mott to the company on a loan of money. The company was prohibited by the charter from lending money except upon certain prescribed securities. They let Mott have money and took this note in violation of the charter, without the required security: Held that the illegal act of the company in taking the note without the required security, was no defense to an action on the note. The case would seem to be parallel in principle with the present. There, Mott got the money from the bank, but did not give the legal security. Here, Hill got the stock, but did not pay for it as required by law but in his promissory note. Roosevelt, in delivering his opinion, denounces the character of the defense in very strong language. He says: "The bare statement of the proposition carries with it, to my mind, its own refutation. It assumes as the law of a christian people a principle, which could hardly be tolerated in a community of swindlers."

*Cowles* v. *Gridley*, 24 Barb. 301, was assumpsit on a note given for a subscription to the Eighth Avenue Bank. The defense set up was that the note was never intended to operate as a security, that it was agreed to be considered as a mere form and not as a valid note in the hands of the bank, and was never in fact delivered as and for a valid note. By the arrangement between the managers of the bank and the

subscribers, it was understood that the subscribers were at liberty to decline the stock subscribed for, and have back their notes. Roosevelt, in delivering the opinion of the court, says : " One thing is clear, there was a consideration for the note. It effected a compliance with the law and enabled the defendant and his associates officially to report under oath that the whole amount of their certified stock was paid in. If the taking of the note had been prohibited, would it be a legitimate satisfaction to the law to deny a recovery on it, and thus, instead of punishing, reward the wrong doer, and at the expense of the innocent and injured creditor ? " It is plain that these remarks apply in full force to the present case.

In *The Farmers' Bank* v. *Burchard*, 33 Verm. 346, it was decided that lending $30,000 in one loan, being more than ten per cent. of the capital stock, in violation of the Vermont statute, would not prevent the bank from recovering on the notes taken for the money lent. In that case the court, speaking of the provisions in the Vermont statutes, which impose penalties on the officers of banks for certain official delinquencies, say : " These provisions seem to be based upon a distinction taken between the corporation as an existing body, and the officers, who are entrusted with the management of its business transactions, and they proceed upon the idea that while such officers may be guilty of misbehavior and worthy of penalty, the corporation itself, as an aggregation of stockholders duly organized, may not only be innocent of any fault, but may even be the victim of the faulty conduct of the officers."

The case of *The White Mountains Railroad* v. *Eastman*, 34 N. H. 124, is a strong authority against the defense set up in this action. It was there held that a secret agreement entered into between the directors of such corporation and a subscriber for shares in its capital stock, that he may, within a specified time, reduce the number of shares thus subscribed for, the subscription being held out as *bona fide* for the full amount, in order to induce others to become subscribers, is void as a fraud upon the other subscribers ; and the action was maintained on the contract to take and pay for the stock. Here the directors agreed to the fraudulent arrangement ; the contract grew out of that arrangement, and yet the agreement to take and pay for the stock was enforced against the defendant. The corporation was not held to be party to the fraud so as to prevent a recovery on the contract which was founded on it. The court held that the defendant was estopped to deny that the contract was such as it was held out to be. This must have been on the ground that the real parties, for whom the recovery was had, in the suit were those who were individually interested in the money recovered, and that the fraud was practiced on them ; that the corporation represented them in the action and was not a party to the fraud.

There are the same grounds for an estoppel here. The illegal act alleged in defense to this note was secret and intended to deceive. The transaction, as it was held out, was a payment in cash for Hill's stock, and a loan on his note for money lent by the bank to him, and, on the principle of *The Railroad* v. *Eastman*, he is estopped to deny that it was such as it was represented to be.

As a general rule, where an act is made unlawful by statute, a contract growing out of the illegal act cannot be enforced at law ; but this is not a rule of universal application. It is always a question of construction, depending upon the provisions of the whole statute and its design and objects. Did the legislature intend, by making these acts unlawful, to discharge the parties to them from the performance of agreements growing out of them ? Would it promote or defeat the object of the statute to apply the general rule ?

Thus in *Harris* v. *Runnels*, 12 Howard 79, it is stated that " whatever may be the structure of the statute in regard to the prohibition and penalty, or penalty alone, it is not to be taken for granted that the legislature meant that contracts in contravention of it are void in the sense that they are not to be enforced in a court of justice ; the statute must be examined as a whole to find out whether or not the makers meant that a contract in contravention of it was to be void so as not to be enforced in a court of justice." The recovery in this case would be for the benefit of those whom the violated provisions of law were intended to protect.

The general objects of these provisions would not be advanced, but defeated, if this defense was admitted, and we cannot for a moment believe that the legislature intended to make a contract like this note void, when they made it unlawful for the directors to receive it for stock instead of cash.

Our conclusion is that there was a sufficient and legal consideration for the note of $5,000, and, of course, for the substituted notes sued in this action, and there must be judgment on the verdict for the plaintiff.